# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

IT'S GREEK TO ME, INC. d/b/a GTM )
SPORTSWEAR and HANESBRAND, INC. )
as plan administrator of the GTM )
EMPLOYEE HEALTH CARE PLAN, )
                                )
          Plaintiffs,           )
                                )          CIVIL ACTION
v.                              )
                                )          No. 17-4084-KHV
Jeffrey S. FISHER and BRETZ &   )
YOUNG, LLC,                     )
                                )
          Defendants.           )
_____)

## MEMORANDUM & ORDER

On September 18, 2017, plaintiffs filed suit under Sections 502(a)(2) and 502(a)(3) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq. Complaint (Doc. #1). Plaintiffs seek damages and equitable relief, claiming that defendants failed to remit to the GTM Employee Health Care Plan ("the Plan") funds recovered in a personal injury lawsuit. This matter comes before the Court on Defendant Bretz And Young, LLC's Motion To Dismiss (Doc. #28) filed December 20, 2017. For reasons stated below, the Court sustains defendant's motion in part.

## Legal Standard

In ruling on a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., the Court assumes as true all well-pleaded factual allegations and determines whether they plausibly give rise to an entitlement of relief. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim which is plausible – not merely

conceivable – on its face. Id. at 679-80; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In determining whether a complaint states a plausible claim for relief, the Court draws on its judicial experience and common sense. Iqbal, 556 U.S. at 679. The Court need not accept as true those allegations which state only legal conclusions. See id.

Plaintiffs bear the burden of framing their claim with enough factual matter to suggest that they are entitled to relief; it is not enough to make threadbare recitals of a cause of action accompanied by conclusory statements. See Twombly, 550 U.S. at 556. Plaintiffs make a facially plausible claim by pleading factual content from which the Court can reasonably infer that defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678. Plaintiffs must show more than a sheer possibility that defendant has acted unlawfully – it is not enough to plead facts that are "merely consistent with" defendant's liability. Id. (quoting Twombly, 550 U.S. at 557). A pleading which offers labels and conclusions, a formulaic recitation of the elements of a cause of action or naked assertions devoid of further factual enhancement will not stand. Iqbal, 556 U.S. at 678. Similarly, where the well-pleaded facts do not permit the Court to infer more than the mere possibility of misconduct, the pleading has alleged – but has not "shown" – that the pleader is entitled to relief. See id. at 679.

When ruling on a Rule 12(b)(6) motion, the Court does not analyze potential evidence that the parties might produce or resolve factual disputes. Jacobsen v. Deseret Book Co., 287 F.3d 936, 941 (10th Cir. 2002). The Court accepts well-pleaded allegations as true and views them in the light most favorable to the non-moving party. Sutton v. Utah State Sch. for the Deaf and Blind, 173 F.3d 1226, 1236 (10th Cir. 1999).

**Factual And Procedural History**

Highly summarized, plaintiffs allege as follows. Plaintiffs are the former and current administrators of the GTM Employee Health Care Plan – a self-funded employee welfare benefit plan. Amended Complaint (Doc. #15) filed December 6, 2017, ¶¶ 7-8. On October 5, 2014, defendant Jeffrey Fisher – a Plan beneficiary – sustained injuries in an automobile accident. Id., ¶ 16. Upon his request, the Plan advanced Fisher $146,726.61 for medical expenses. Id., ¶ 18. To receive the advance, Fisher's wife agreed that Fisher would reimburse the Plan from any "payment, award or settlement which may be paid by a third party" as a result of the accident. Id., ¶ 19 (quoting Accident Questionnaire). The Plan requires that all participants and beneficiaries who receive medical advances subrogate claims against third-parties and/or reimburse the Plan with any recovery from a third-party. Id., ¶ 20. The Plan terms also state that regardless of who possesses the eventual recovery, the Plan will have an equitable lien on recovered funds. Id.

After receiving his advance from the Plan, Fisher instituted a personal injury lawsuit concerning his automobile accident and ultimately received a settlement payment. Id., ¶ 29. The settlement agreement required Fisher and the law firm that represented him – Bretz & Young, LLC – to satisfy any liens on the settlement funds. Id., ¶ 30. Before entering into this settlement agreement, plaintiffs placed Bretz & Young on notice of their lien. Id., ¶ 25. Bretz & Young and Fisher nonetheless failed to reimburse the Plan. Id., ¶¶ 31, 40-43. Plaintiffs allege that Bretz & Young and Fisher each maintain possession over portions of the settlement funds. Id., ¶ 43

Plaintiffs filed suit against Bretz & Young and Fisher to enforce the Plan's subrogation and reimbursement terms. Among other things, plaintiffs seek (1) a constructive trust and equitable lien over funds from the personal injury settlement pursuant to ERISA Section 502(a)(3) (Count 1);

(2) a declaratory judgment stating that the Plan is entitled to first priority reimbursement from the personal injury settlement funds (Count 2); damages for (3) breach of contract (Count 4), (4) breach of fiduciary duty pursuant to ERISA Section 502(a)(2) (Count 5), (5) state and federal common law conversion (Counts 6 and 7) and (6) tortious interference (Count 8); and (7) attorneys' fees pursuant to 29 U.S.C. § 1132(g) (Count 9).[1]

## **Analysis**

On December 20, 2017, Bretz & Young moved to dismiss all the foregoing claims. <u>Defendant Bretz And Young, LLC's Memorandum In Support Of Its Motion To Dismiss</u> (Doc. #29)

---

[1] On January 30, 2018, the parties agreed to and the Court entered a <u>Consent Order</u> (Doc. #44). In general, the consent order details the personal injury settlement and explains how defendants disbursed and dissipated the settlement funds. The consent order also entered a preliminary injunction with the following terms:

> 30. Defendant Mr. Fisher is enjoined from disposing of or encumbering in any way (1) the mobile home upon which he paid off the mortgage with the settlement funds that are the subject of this lawsuit; and (2) the vehicle upon which he paid off the loan with the settlement funds that are the subject of this lawsuit, until the resolution of this lawsuit.
>
> 31. Defendant Mr. Fisher and Defendant Bretz & Young, LLC, must hold in trust and are enjoined from disbursing, spending, disposing of or encumbering in any way the pay period payments until resolution of this lawsuit.
>
> 32. Bretz & Young is enjoined from depleting the balance of its operating account as of January 24, 2018, until resolution of this lawsuit.

<u>Id.</u>, ¶¶ 30-32.

In deciding a motion to dismiss, the Court may not consider evidence outside the pleadings unless it converts the motion to a motion for summary judgment. <u>Prager v. LaFaver</u>, 180 F.3d 1185, 1188-89 (10th Cir. 1999); Fed. R. Civ. P. 12(b)(6). The Court declines to convert this motion to dismiss into a summary judgment motion. Therefore, when deciding this motion, the Court did not consider any facts or allegations in the Consent Order.

filed December 20, 2017 at 4. Bretz & Young asserts that the Court should dismiss Counts 1 and 2 because plaintiffs have not alleged that Bretz & Young agreed to the Plan's terms; Counts 4, 6 and 8 because ERISA preempts state law causes of action; Count 5 because Bretz & Young did not become a fiduciary of the Plan; Count 7 because federal conversion provides a criminal, not civil, cause of action; and Count 9 because plaintiffs have not alleged that they are entitled to attorneys' fees.

**I.     ERISA Section 502(a)(3) Claim (Count 1)**

Bretz & Young asserts that it cannot be sued on plaintiffs' claim for an equitable lien and constructive trust on the settlement funds under Section 502(a)(3), 29 U.S.C. § 1132(a)(3), because plaintiffs do not allege that the law firm agreed to honor the Plan terms. Memorandum In Support (Doc. #29) at 5. In particular, Bretz & Young argues that a "subrogation agreement between a client . . . and an ERISA plan is only enforceable against a client's attorney . . . if the attorney agrees with a client and a plan to honor the plan's subrogation rights." Id. at 5 (quoting Treasurer, Trs. of Drury Indus., Inc. Health Care Plan and Trust v. Goding, 692 F.3d 888, 894 (8th Cir. 2012)).

Plaintiffs properly argue that Supreme Court precedent contradicts this argument. Plaintiffs' Memorandum In Opposition To Defendant Bretz & Young LLC's Motion To Dismiss (Doc. #38) filed January 10, 2018 at 9. The Supreme Court has recognized that Section 502(a)(3) limits plaintiffs to equitable relief but "admits no limit . . . on the universe of possible defendants." Harris Trust and Sav. Bank v. Salomon Smith Barney, Inc., 530 U.S. 238, 246 (2000). Thus, the viability of plaintiffs' Section 502(a)(3) claim against Bretz & Young does not hinge on whether it agreed to the Plan terms. In fact, the Supreme Court explicitly rejected the proposition that Section 502(a)(3) only extends to parties who agree to the terms of an ERISA plan. Id. at 245-47

("We reject, [the] conclusion that, absent a substantive provision of ERISA expressly imposing a duty upon a nonfiduciary party in interest, the nonfiduciary party may not be held liable under § 502(a)(3) . . .").

Furthermore, defendant's argument relies on non-binding, inapposite authority. In Goding, 692 F.3d at 894, the Eighth Circuit held that an ERISA plan could not recover from a law firm that represented a plan beneficiary. In doing so, it rejected two separate arguments from the ERISA plan. First, it concluded that when the law firm acknowledged the Plan's subrogation terms, it did not create an implied contract between the firm and the Plan. Id. at 894-95. Second, it held that the plan could not recover under Section 502(a)(3) because the law firm no longer possessed any disputed funds, and therefore the plan sought legal, not equitable relief. Id. at 896-97 (citing Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 213-14 (2002) (when defendant no longer possesses disputed funds, plaintiffs seek legal relief not permitted under Section 502(a)(3)).

Bretz & Young blurs the Eighth Circuit analysis of two separate legal issues and also ignores an imperative factual distinction between Goding and the allegations at hand. In Goding, the law firm did not have possession of any disputed funds. Here, plaintiffs allege that Bretz & Young maintains possession of the disputed funds. Amended Complaint (Doc. #15), ¶ 43 ("Defendants are in possession and/or constructive possession of funds . . ."). Thus, under Great-West, 534 U.S. at 214, and Goding, 692 F.3d at 896-97, plaintiffs can seek equitable relief under Section 502(a)(3). Viewing the allegations in the light most favorable to plaintiffs, the Court finds that plaintiffs have sufficiently alleged a Section 502(a)(3) claim against Bretz & Young. The Court overrules the motion to dismiss Count 1.

## II.     Declaratory Judgment Claim (Count 2)

Bretz & Young also relies on Goding to argue that plaintiffs cannot pursue a declaratory judgment which asserts that the Plan is entitled to first priority over any personal injury settlement proceeds (Count 2). Memorandum In Support (Doc. #29) at 8-9. The law firm contends that it cannot be a proper defendant to plaintiffs' declaratory judgment claim because, under Goding, it does not need to honor the Plan terms. Id. In response, plaintiffs assert that they sufficiently allege that the Plan terms explicitly extend to "any funds received by the Covered Person and/or their attorney." Memorandum In Opposition (Doc. #38) at 13-15; Amended Complaint (Doc. #15), ¶ 20 (citing the Plan's subrogation and reimbursement terms).

Bretz & Young and plaintiffs claim entitlement to the same disputed settlement funds. To resolve this issue, plaintiffs ask the Court to "declare the rights and other legal relations" among the parties pursuant to the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201. Goding – which does not discuss declaratory relief – does not prohibit plaintiffs from asking the Court to exercise its authority under the DJA. Furthermore, for reasons stated above, Goding does not conclusively establish that plaintiffs cannot enforce the Plan terms against Bretz & Young. Federal courts have broad discretion concerning when to render declaratory relief. See Kunkel v. Cont'l Cas. Co., 866 F.2d 1269, 1273 (10th Cir. 1989); see also State Farm Fire & Cas. Co. v. Mhoon, 31 F.3d 979, 983 (10th Cir. 1994) (listing factors courts should consider when deciding to entertain DJA action). Bretz & Young does not convince the Court that plaintiffs have failed to allege a plausible claim for declaratory relief. Accordingly, the Court overrules Bretz & Young's motion to dismiss Count 2.

### III.   State Law Claims (Counts 4, 6 And 8)

Bretz & Young asserts that ERISA preempts plaintiffs' claims for breach of contract (Count 4), state law conversion (Count 6) and tortious interference (Count 8). Memorandum In Support (Doc. #29) at 8-9.  A district court may grant judgment as a matter of law under Rule 12(b)(6) on the basis of an affirmative defense like preemption.  Caplinger v. Medtronic, Inc., 784 F.3d 1335, 1341 (10th Cir. 2015).  While plaintiffs generally bear the burden of clothing their claims with sufficient factual allegations, defendants must prove their affirmative defense in their motion to dismiss.  Id. at 1342 n.2. (citing Jones v. Bock, 549 U.S. 199, 212-14 (2007)).  Thus, Bretz & Young bears the burden of proving that as a matter of law ERISA preempts plaintiffs' state law claims.  Before addressing the merits, the Court must identify which type of preemption Bretz & Young asserts.

#### A.   Conflict And Complete Preemption Under ERISA

ERISA can preempt state law claims under two distinct, yet often-confused theories: "conflict preemption" and "complete preemption."  Feliz v. Lucent Tech. Inc., 387 F.3d 1146, 1153 (10th Cir. 2004); see David P. Coldesina, D.D.S. v. Estate of Simper, 407 F.3d 1126, 1135-36 (10th Cir. 2005).   Preemption pursuant to ERISA Section 514(a) is conflict preemption. 29 U.S.C. § 1144(a). Section 514(a) states that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described [in] this title . . ." Id.; Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 45 (1987).  In general, conflict preemption bars parties from bringing any state law claims that "relate to . . . employee benefit plans" and do not fall within certain statutory exceptions.  Pilot Life Ins. Co., 481 U.S. at 45.

Complete preemption is a more narrow doctrine.  See, e.g., Marcus v. AT&T Corp., 138 F.3d

46, 54 (2d Cir. 1998). Complete preemption occurs when a claimant attempts to bypass ERISA – the "comprehensive statute for the regulation of employee benefit plans" – by relying on state law causes of action. Aetna Health Inc. v. Davila, 542 U.S. 200, 208 (2004). Because ERISA Section 502 provides an exclusive, comprehensive civil enforcement scheme, "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement [provisions] . . . is . . . pre-empted." Id. at 209. Complete preemption precludes claims when (1) a party "could have brought his claim under ERISA § 502(a)[], and [2] where there is no other independent legal duty that is implicated by a defendant's action . . ." Id. at 210. A party may invoke complete preemption to (1) seek dismissal of state law claims in federal court or (2) remove a state law action to federal court. See Metro. Life. Ins. Co. v. Taylor, 481 U.S. 58, 66 (1987) ("causes of action within the scope of . . . § 502(a) [are] removable to federal court"); see also David P. Coldesina, D.D.S., 407 F.3d at 1139 (affirming dismissal completely preempted state law claim).

Plaintiffs properly note that Bretz & Young does not identify whether it invokes conflict preemption or complete preemption. Memorandum In Opposition (Doc. #38) at 22. Because Bretz & Young primarily relies on complete preemption case law and fails to cite ERISA Section 514(a), plaintiffs presume that it asserts complete preemption. Id. at 22 (stating that Bretz & Young "proceed[s] only on a complete preemption theory"). Bretz & Young does not contest plaintiffs' presumption. See Defendant Bretz & Young LLC's Reply Memorandum In Support Of Motion To Dismiss (Doc. #40) at 5. Because Bretz & Young cites conflict and complete preemption authority interchangeably and for reasons stated above, the Court only analyzes whether Bretz & Young has demonstrated that plaintiffs' state law claims are completely preempted.

B.     Complete Preemption Of Plaintiffs' State Law Claims

As stated above, Bretz & Young bears the burden of proving that ERISA completely preempts plaintiffs' state law claims. See Caplinger, 784 F.3d at 1342 n.2. Plaintiffs argue that Bretz & Young does not meet this burden because plaintiffs' claims do not meet the complete preemption test established in Davila, 542 U.S. at 210 – a case that both parties rely on. Memorandum In Opposition (Doc. #38) at 22; see Memorandum In Support (Doc. #29) at 8 (citing Davila), Memorandum In Opposition (Doc. #38) at 22-23 (citing Davila) and Reply (Doc. #40) at 5 (citing Davila).

Plaintiffs assert that Davila "espouses a two-pronged test to evaluate whether a particular claim is completely preempted by ERISA § 502(a) . . . . [and] Defendant's brief only argues complete preemption based on the second prong of the Davila test." Memorandum In Opposition (Doc. #38) at 22. Bretz & Young does not respond to plaintiffs' pointed argument that ERISA does not completely preempt their state law claims. The reply brief does not address whether (1) plaintiffs' state law claims meet the first prong of the complete preemption test or (2) whether the Court should analyze complete preemption under a different standard. Reply (Doc. #40) at 5.

Further, plaintiffs argue that they base their state law claims on legal duties independent of the ERISA Plan. Memorandum In Opposition (Doc. #38) at 26-28. In particular, plaintiffs allege that the settlement agreement required Bretz & Young to satisfy any claims or liens on the settlement proceeds. Id. at 26 (citing Amended Complaint (Doc. #15), ¶¶ 30, 34-35, 67-69). Again, Bretz & Young fails to respond to plaintiffs' argument. See Reply (Doc. #40) at 5. Because Bretz & Young declines to refute plaintiffs' specific arguments against dismissal, it has not meet its "burden of showing that the law compel[s] dismissal of the complaint." Caplinger, 784 F.3d

at 1341. Thus, the Court overrules defendant's motion to dismiss Counts 4, 6 and 8.

**IV.    ERISA Section 502(a)(2) Claim (Count 5)**

Bretz & Young seeks to dismiss plaintiffs' breach of fiduciary duty claim under ERISA Section 502(a)(2), 29 U.S.C. § 1132(a)(1)(B), because plaintiffs do not sufficiently allege that Bretz & Young became a fiduciary to the Plan. Memorandum In Support (Doc. #29) at 10-11. Bretz & Young supports its argument with cases from the Eighth, Ninth and Eleventh Circuits which hold or suggest that attorneys of plan participants and beneficiaries do not become plan fiduciaries. Id. (citing S. Council of Indus. Workers v. Ford, 83 F.3d 966, 969 (8th Cir. 1996), Nieto v. Ecker, 845 F.2d 868, 870-71 (9th Cir. 1988) and Chapman v. Klemick, 3 F.3d 1508, 1509-11 (11th Cir. 1993)). Plaintiffs assert that Bretz & Young meets the ERISA definition of a fiduciary because it "exercise[d] . . . authority or control respecting management or disposition of [plan] assets."[2] Memorandum In Opposition (Doc. #38) at 16-18 (quoting 29 U.S.C. § 1002(21)(A)). Further, plaintiffs argue that the Court should not consider the authority cited by Bretz & Young because those cases do not "analyze the fiduciary question under the Tenth Circuit's framework." Id. at 20.

---

[2]    ERISA defines fiduciary as follows:

> Except as otherwise provided in subparagraph (B), a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or <u>exercises any authority or control respecting management or disposition of its assets</u>, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan. Such term includes any person designated under section 1105(c)(1)(B) of this title.

29 U.S.C. § 1002(21)(A) (emphasis added). The parties' briefing focuses on whether Bretz & Young became a de facto fiduciary by exercising fiduciary functions under subsection (i).

### A.     The Tenth Circuit Framework

Plaintiffs primarily rely on In re Luna, 406 F.3d 1192 (10th Cir. 2005), which they contend articulates the Tenth Circuit framework for analyzing whether an individual meets ERISA's fiduciary definition. In Luna, an employer breached a collective bargaining agreement by failing to make contributions to employee benefit funds. Id. at 1197. After the employer filed for bankruptcy, the fund trustees sued on behalf of the employees. Id. The trustees asserted that the employer could not discharge its contractually-required contributions to the employee funds because the employer was a de facto fiduciary under ERISA. Id. at 1197-98.

The Tenth Circuit analyzed whether the employer met ERISA's fiduciary definition under a two-step test. It held that to satisfy ERISA, the trustees had to prove that (1) the unpaid contributions were plan assets and (2) the employer exercised a fiduciary function, i.e. authority and control over the management or disposition of the assets. Id. at 1198.

In analyzing whether the claim involved "plan assets," because ERISA does not define the term, the Tenth Circuit used the definition of asset from a Department of Labor Advisory Opinion. Id. at 1199 (citing Department of Labor Advisory Opinion No. 93–14A (May 5, 1993)). The court determined that plan asset means any tangible or intangible item in which the plan has a beneficial ownership interest, and which has value. Id. The court held that the employees' "future interest in the collection of the contractually-owed contributions" was a plan asset. Id. (emphasis in original).

Next, the Tenth Circuit analyzed whether the employer assumed de facto fiduciary status by "exercis[ing] any authority or control respecting management or disposition of plan assets." Id. at 1201-02 (quoting 29 U.S.C. § 1002(21)(A)). Focusing on the contractual nature of the plan asset, the Tenth Circuit reasoned as follows:

> The question of whether the [employer] exercised authority or control over the asset at issue almost answers itself: It is the Trustees, not the [employer], who control the contractual right to collect unpaid contributions from the [employer].  Whether to enforce their contractual rights is entirely up to the Trustees; the [employer], meanwhile, ha[s] no say over whether this right will be enforced or not.

Id. at 1202.  Accordingly, it held that the employer had not become a plan fiduciary.  Id.  It went on to verify that ERISA's statutory language and purpose, the law of trusts, regulatory interpretations and ERISA case law supported its conclusion.  Id. at 1202-08.  In doing so, it made two statements that are relevant to the pending motion.  First, it explicitly rejected the idea that the employer became a plan fiduciary as soon as it breached its agreement to make contributions.  Id. at 1203.  Second, the Tenth Circuit distinguished between cases where "employers fail to pay contractually-owed contributions" and those "where an employer has control over funds that were withheld from employees' pay checks."  Id. at 1206 n.13.

### B. Bretz & Young's Fiduciary Status

Under the Tenth Circuit analysis, this Court must first determine whether the disputed settlement proceeds constitute a plan asset.  Plaintiffs contend that the Plan's lien on the settlement funds makes them a plan asset.  Memorandum In Opposition (Doc. #38) at 17-18.  Viewing the allegations in the light most favorable to plaintiffs, the Plan's lien attached to the disputed funds when Bretz & Young obtained the funds.  Amended Complaint (Doc. #15), ¶¶ 20, 29-31, 34-35; see Montanile v. Bd. of Trs. of Nat. Elevator Indus. Health Benefit Plan, 136 S. Ct. 651, 658 (2016) (lien by agreement attaches when party obtains title to encumbered property).  Plaintiffs sufficiently allege a valuable interest in the settlement funds.  Thus, the Plan's lien on the settlement funds constitutes a plan asset.

Next, the Court must decide whether Bretz & Young attained de facto fiduciary status by

-13-

exercising authority and control over the disposition of the settlement funds. Bretz & Young asserts that it did not assume fiduciary functions because it merely "possessed assets to which the Plan asserted a claim for a limited period of time." Reply (Doc. #40) at 4-5. On the other hand, plaintiffs argue that "[t]he Amended Complaint alleges that Bretz & Young knew of the Plan's claim over the funds, controlled the funds and subsequently . . . disburse[d] the funds . . ." Memorandum In Opposition (Doc. #38) at 18 (citing Amended Complaint (Doc. #15), ¶¶ 24-25, 31, 80). Further, plaintiffs attempt to distinguish their claim from the claim in Luna. They state that "[u]nlike In re Luna, . . . [this case involves] the present right to plan assets (i.e. Disputed Funds) that are in the actual possession Bretz & Young."

These arguments misconstrue the plan asset at issue. Plaintiffs allege that the Plan asset was an equitable lien over the settlement funds – not the settlement fund themselves. Like the contractual rights in Luna, the Plan – not Bretz & Young – maintained the right to enforce its lien against the settlement funds while they were in the law firm's possession. See In re Luna, 406 F.3d at 1202. The Court recognizes that plaintiffs allege more than a mere contractual claim to the settlement funds, but they do not materially distinguish their claim from those at issue in Luna.

Further, the Tenth Circuit stated that ERISA case law indicates that "management or disposition [of plan assets] . . . refers to common transactions in dealing with a pool of assets: selecting investments, exchanging one instrument or asset for another, and so on." Id. at 1201 (quoting Harris Trust & Sav. Bank v. John Hancock Mut. Life Ins. Co., 302 F.3d 18, 28 (2d Cir. 2002)); see David P. Coldesina, D.D.S., 407 F.3d at 1133-34 (accountant became fiduciary when plan contributions deposited directly to accountant's business account). Plaintiffs do not allege that Bretz & Young exercised management or authority to dispose of a "pool of [plan] assets." At best,

plaintiffs allege that Bretz & Young breached the Plan subrogation and reimbursement terms by failing to remit settlement funds. See Amended Complaint (Doc. #15), ¶ 80 (Bretz & Young "with full knowledge of the Plan's lien and claim to the funds . . . attemp[ed] to disburse the funds and convert them to their own personal use."). As stated, Luna expressly rejected the notion that a person "becomes a fiduciary of an ERISA plan as soon as it breaches [an] agreement" concerning plan assets. Id. at 1203. Thus, plaintiffs do not sufficiently allege that Bretz & Young attained fiduciary status.

The Court cannot "disregard the general consensus among other circuits that lawyers engaged in representation of plan beneficiaries do not assume an ERISA-defined fiduciary relationship with the plan." Greenwood Mills, Inc. v. Burris, 130 F. Supp. 2d 949, 957 (M.D. Tenn. 2001) (emphasis in original). While other circuits do not analyze the issue under the Tenth Circuit two-pronged framework, the Court finds that their analyses are instructive. See S. Council Of Indus. Workers, 83 F.3d at 969; Hotel Emps. & Rest. Emps. Int'l Union Welfare Fund v. Gentner, 50 F.3d 719, 722-23 (9th Cir. 1995) abrogated on other grounds by CGI Techs. and Sols. Inc. v. Rose, 683 F.3d 1113, 1117 (9th Cir. 2012); Chapman, 3 F.3d at 1509-11.

For example, in Chapman, 3 F.3d at 1509-11, the Eleventh Circuit reasoned that a beneficiary's attorney should not be considered a fiduciary because the attorney would owe conflicting duties to the plan and his client. "Imposing fiduciary status in cases such as this one would likely render it difficult for [ERISA plan] beneficiaries with personal injury claims to obtain counsel" and harm the individuals ERISA seeks to protect. Id. at 1511-13. The Tenth Circuit has voiced similar concerns. In re Luna, 406 F.3d at 1208 (imposing fiduciary status on those who contract with employee-benefit funds would "undermine the very purpose of ERISA"); see Lebahn

-15-

v. Nat'l Union Uniform Pension Plan, 828 F.3d 1180, 1186 (10th Cir. 2016) (rejecting approach that would "stretch the definition of 'fiduciary' beyond any meaningful boundaries"). For reasons stated above, the Court sustains defendant's motion to dismiss Count 5.

## V.     Federal Common Law Conversion (Count 7)

Bretz & Young asserts that the Court should dismiss plaintiffs' federal conversion claim because it relies on a criminal cause of action: 18 U.S.C. § 664. Memorandum In Support (Doc. #29) at 11-12; see 18 U.S.C. § 664 (authorizing criminal penalties for any person that embezzles, steals or converts funds from an ERISA plan). In response, plaintiffs invite the Court to develop a civil cause of action under federal common law. Memorandum In Opposition (Doc. #38) at 28-29.

In limited circumstances, federal courts can develop federal common law. Milwaukee v. Illinois and Michigan, 451 U.S. 304, 313 (1981). Nevertheless, judicial development of common law claims remains "subject to the paramount authority of Congress." Id. (quoting New Jersey v. New York, 283 U.S. 336, 348 (1931)). Accordingly, "the 'power [of the federal courts] to develop common law pursuant to ERISA does not give carte blanche power to rewrite the legislation to satisfy [a court's] proclivities.'" Resolution Trust Corp. v. Fin. Inst. Ret. Fund, 71 F.3d 1553, 1556 (10th Cir. 1995) (quoting Jamail, Inc. v. Carpenters Dist. Council of Houston Pension & Welfare Trusts, 954 F.2d 299, 303-04 (5th Cir. 1992)). Because the Court finds no reason to alter or add to the specific and refined civil remedies which Congress created through ERISA, it declines plaintiffs' invitation to develop a civil cause of action. See Davila, 542 U.S. at 208 (ERISA provides "comprehensive legislative scheme" with "integrated system of procedures for enforcement"). Accordingly, the Court sustains defendant's motion to dismiss Count 7.

## VI.     Attorneys' Fees (Count 9)

When an ERISA claimant achieves "some degree of success on the merits," the Court has discretion to award reasonable attorneys' fees and costs to either party.  29 U.S.C. § 1132(g); Hardt v. Reliance Standard Life Ins., 560 U.S. 242, 245 (2010).  Assuming that the Court would dismiss all of plaintiffs' ERISA claims, Bretz & Young seeks to dismiss plaintiffs' claim for attorneys' fees. This motion is premature.  Thus, the Court overrules defendant's motion to dismiss Count 9.

**IT IS THEREFORE ORDERED** that Defendant Bretz And Young, LLC's Motion To Dismiss (Doc. #28) filed December 20, 2017 is **SUSTAINED** as to Counts 5 and 7 and **OVERRULED** as to Counts 1, 2, 4, 6 and 9.

Dated this 20th day of February, 2018 at Kansas City, Kansas.

s/ Kathryn H. Vratil  
Kathryn H. Vratil  
United States District Judge
